# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

VANESSA K. JENNINGS,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

No. 17-CV-3062-LTS

**REPORT AND
RECOMMENDATION**

---

Plaintiff, Vanessa K. Jennings ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, as well as for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382-83f. Claimant contends that the Administrative Law Judge (ALJ) who heard her claims erred in determining that claimant was not disabled. For the following reasons, I recommend that the District Court **reverse and remand** the ALJ's decision to determine whether work exists in significant numbers in the national economy that claimant can perform.

## I.    BACKGROUND

I adopt the parties' Joint Statement of Facts (Doc. 14) and therefore only summarize the pertinent facts here. Claimant was born in June 1967, and was forty-four years old on the alleged onset date of disability, and fifty years old on the date of the

ALJ's decision. (AR 207, 209).[1] Claimant has at least a high school education[2] (AR 207) and previously worked as a cashier II, sales attendant, and tractor-trailer truck driver. (Doc. 14, at 5).

On November 23, 2009, claimant filed applications for benefits under the Social Security Act; those applications were denied administratively and, ultimately, by a federal district court. (AR 192). On July 18, 2013, claimant filed applications for disability and disability insurance benefits, as well as for supplemental security income, alleging an alleged onset date of disability of March 1, 2012, for each application. (*Id.*). Claimant's applications were denied initially and on reconsideration, and claimant thereafter requested a hearing before an ALJ. (*Id.*). ALJ Eric S. Basse held an administrative hearing on April 28, 2016, at which both claimant and a vocational expert testified. (AR 219-20). The ALJ issued a decision on June 1, 2016, in which he denied claimant's applications for benefits. (AR 192-209). On May 30, 2017, the Appeals Council denied review. (AR 1-4). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 19, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). On February 13, 2018, the Court deemed this case fully submitted and ready for decision. On June 5, 2018, the Honorable Leonard T. Strand, Chief United States District Judge, referred this case to me for a Report and Recommendation.

---

[1] "AR" refers to the administrative record below.

[2] One assessment reflects that claimant attained an eighth grade education and subsequently received a general equivalency diploma ("GED"). (AR 1523). This is in slight contrast to the assertion that claimant has a high school education, but this difference is immaterial, and neither party takes issue with the ALJ's assessment of claimant's education. Further, claimant testified during the administrative hearing that she received a regular high school diploma, as opposed to a GED. (AR 221-22).

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not

disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence.

The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.    THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since March 1, 2012, the alleged onset date of disability. (AR 194).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "obesity, obstructive sleep apnea, epilepsy, major depressive disorder, general anxiety disorder, posttraumatic stress disorder, asthma, chronic obstructive pulmonary disease, and hearing loss." (AR 194). The ALJ also discussed claimant's other alleged impairments, and found that those impairments did not meet the definition

of "severe" impairments under the Social Security Administration regulations. (AR 195-96).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 196-98).

At Step Four, the ALJ found that claimant had the RFC to perform sedentary work with the following limitations:

> She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes and scaffolds. She must avoid concentrated exposure to pulmonary irritants. The claimant must avoid exposure to hazards such as machinery, heights, and open bodies of water. She cannot perform commercial driving. The claimant cannot be exposed to more than moderate noise levels and cannot perform work that requires communication by telephone. The claimant is limited to simple, routine tasks with simple instructions. She can occasionally interact with the public. She cannot work at production rate pace.

(AR 198-99). Also at Step Four, the ALJ found that claimant was unable to perform any past relevant work. (AR 207).

At Step Five, the ALJ found that despite claimant's RFC, there were jobs that existed in significant numbers in the national economy that claimant could still perform, including document preparer and addresser. (AR 208). Therefore, the ALJ concluded that claimant was not disabled. (AR 208-09).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks

omitted).  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the Court "might have weighed

the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Claimant alleges that remand is necessary for the following reasons: 1) the ALJ's RFC assessment is flawed because the ALJ failed to properly evaluate the work-related limitations assessed by Drs. Nirmal Bastola, M.D., and Dan Murphy, Ph.D., and the ALJ's RFC assessment is not supported by substantial evidence on the record as a whole; 2) the ALJ failed to prove that other work exists in significant numbers in the national economy that claimant is capable of performing; and 3) the Commissioner failed to provide a complete administrative record. (Doc. 15). I will address each issue in turn.

### A.    The ALJ's RFC Assessment

Claimant first asserts that the ALJ erred with respect to the weight the ALJ afforded to the opinions of two medical professionals: Drs. Bastola and Murphy.

#### i.    Dr. Bastola

Dr. Bastola was claimant's treating physician since at least September 16, 2014. (AR 1775). Between September 2014 and February 2016, Dr. Bastola's office saw claimant on nine occasions. (AR 1675, 1684, 1712, 1719, 1738, 1748, 1759, 1775, and 1805). Dr. Bastola diagnosed claimant as having chronic low back pain, depression, type II diabetes, morbid obesity, and hypertension. (AR 2052). Dr. Bastola opined that claimant was able to sit and stand/walk for fewer than two hours each in an eight-hour work day. (AR 2053). Dr. Bastola also opined that claimant's mental impairments rendered her incapable of performing low stress work and incapable of maintaining

attention and concentration.  (AR 2056).  The ALJ afforded Dr. Bastola's opinion little weight.  (AR 205-06).

"'A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2).  "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 817-18 (8th Cir. 2007) (internal quotation marks omitted).  A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).  "It may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Samons*, 497 F.3d at 818).  "The ALJ 'may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (omission in original) (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)).  Ultimately, an ALJ must "give good reasons" for the weight given to a treating physician's opinion.  20 C.F.R. § 404.1527(c)(2).  *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

With respect to Dr. Bastola, claimant argues that the ALJ erred in discounting the weight afforded to Dr. Bastola's opinions because the opinions were offered by a treating

physician, were supported by substantial evidence on the record as a whole and were, plaintiff argues, therefore entitled to at least great weight, if not controlling weight. (Doc. 15, at 4-1; AR 205). Claimant argues that the major differences between the ALJ's RFC assessment and Dr. Bastola's assessment were claimant's "ability to sit and stand/walk; need for frequent absences; and use of her hands." (Doc. 15, at 7). Although claimant does not explicitly state what she believes the ALJ's RFC assessment should have reflected on these issues, claimant would, presumably, advocate for the same limitations assessed by Dr. Bastola.

Claimant sets forth a great deal of evidence that purportedly supports claimant's position that the ALJ erroneously discredited Dr. Bastola's opinions. (*See id.*, at 6-18). The opinions that the ALJ discounted, specifically, were Dr. Bastola's opinions that "claimant was limited to less than the full range of sedentary [work] with restrictions that included frequent breaks and missed work. Dr. Bastola also included mental limitations such as incapability of performing low stress work and inability to maintain attention and concentration."[3] (AR 205). The ALJ found these opinions "excessive in light of medical evidence of record." (*Id.*).

Dr. Bastola assessed claimant with both physical limitations and mental limitations. (AR 205-06). As I will discuss such mental limitations at length when discussing Dr. Murphy's opinions, I will simply note here that the medical evidence of record was sufficient to support the ALJ's finding that claimant could perform "simple, routine tasks with simple instructions," and could work, but not "at a production rate

_____

[3] It is unclear whether the ALJ attributed little weight to only Dr. Bastola's opinion that claimant was incapable of performing low stress work and was unable to maintain attention and concentration, or whether the ALJ also attributed little weight to the opinion that claimant was limited to less than the full range of sedentary work, with restrictions that included frequent breaks and missed work. (*See* AR 205). In the interest of giving claimant the greatest benefit possible, I have assumed, *in arguendo*, that the ALJ afforded little weight to each opinion Dr. Bastola offered.

pace." (AR 199). As for physical limitations, I find no error with respect to the ALJ's treatment of Dr. Bastola's opinions.

The ALJ noted that Dr. Bastola may have relied more on claimant's subjective reports than on objective medical evidence in assessing claimant's limitations. (AR 205). Although I agree that this is a distinct possibility, the record does not show whether Dr. Bastola actually did so. Dr. Bastola's treatment notes list numerous reports made by claimant to Dr. Bastola, many of which appeared in Dr. Bastola's medical source statement as Dr. Bastola's own opinions. (*See, e.g.*, AR 1748, 1765, 1775; 2052-57). This is potentially probative on the formulation of Dr. Bastola's opinions, but this evidence is insufficient to conclusively prove whether Dr. Bastola's opinions were independently corroborated.

The opinions at issue were offered on a form that was largely a checkbox form. Although part of the form did require Dr. Bastola to write in responses—and Dr. Bastola did so—the relevant opinions were offered almost purely by checking boxes. For instance, when asked if claimant would "need a job that would permit shifting positions at will from sitting, standing or walking," Dr. Bastola checked the box for "Yes," but offered no explanation as to why such a job would be necessary. (AR 2054). In response to this same question, Dr. Bastola wrote "I don't see how she can work 8 hrs a day." (*Id.*). I recognize that such a deviation from the "checkbox style" is probative on the amount of weight to give to the opinions contained on the form. Dr. Bastola's statement that he could not see how claimant could work eight hours in a day, however, is conclusory and does not lend itself to any beneficial analysis. As a result, it is of little benefit. Further, Dr. Bastola merely checked boxes and circled responses when asked about claimant's need to walk throughout the day, claimant's ability to carry certain weights, and need to miss work. (AR 2054-56). When asked to explain his opinion that claimant's legs needed to be elevated, Dr. Bastola wrote "swelling tingling," which does

lend support to that portion of Dr. Bastola's opinion. (AR 2054). Claimant, however, has not contested the ALJ's treatment of this issue. (*See* Doc. 15, at 15-16).

Opinions that are contained in conclusory checkbox forms that offer no medical evidence and provide little to no elaboration are of little benefit when assessing a claimant's application for benefits. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The opinions that are primarily at issue here were offered on just such a checkbox form and I therefore find that the ALJ could properly discount them. Further, claimant testified that she did not know why Dr. Bastola opined that claimant would need to be absent from work at least four days per month. (AR 230). Although a claimant's lack of knowledge on such an issue could lead to the conclusion that the opinion is based on the medical evidence, as opposed to a claimant's subjective complaints, claimant's answers to the ALJ's follow-up questions are notable. The ALJ inquired as to whether claimant needed to lay down or sit reclining frequently, or whether claimant had periods where she needed to rest and "not do[ ] anything." (AR 230-31). Claimant indicated that she did not need to lay down or recline frequently and, instead, sat in a chair or in her walker. (*Id.*). Further, claimant's response indicates that she tries to occupy her time with "little arts and crafts" and by picking up her house. (*Id.*). Claimant also cooks and tries to do the dishes. (*Id.*). Such tasks and claimant's apparent attempts to occupy her time are inconsistent with claimant needing to miss work four or more days per month. It is entirely possible that Dr. Bastola had a legitimate reason for opining that such absences would be necessary. Based on the checkbox nature of the form, however, and based on the lack of elaboration on the form, I am unable to ascertain such a reason.

Although the ALJ could have provided more specific information with respect to the weight attributed to Dr. Bastola's opinions, I find that the ALJ did offer good reasons for the weight afforded to Dr. Bastola's opinions and, therefore, I respectfully recommend that the Court uphold the ALJ's treatment of Dr. Bastola's opinions.

Claimant also argues that "the ALJ failed to find [claimant] had a severe cardiac impairment," but claimant does not explain how the ALJ's failure to find a severe cardiac impairment relates to Dr. Bastola's opinions, nor does claimant ask the Court to find that such a severe impairment existed. To the extent claimant seeks relief with respect to her cardiac abnormalities, I find no error. Claimant alleges that the ALJ ignored an electrocardiogram and a PET myocardial perfusion rest and stress test, both of which were conducted in October 2012. (Doc. 15, at 17-18). The ALJ, however, directly referenced both tests in determining that claimant's cardiac abnormalities did not constitute severe impairments. (AR 195). Claimant's allegation that these tests were ignored comprises the bulk of claimant's argument that the ALJ erred. Because these tests were not ignored, it is unclear why claimant argues the ALJ's consideration of claimant's cardiac abnormalities was in error. Therefore, I decline to find that the ALJ did err.

### ii. *Dr. Murphy*

Turning now to the ALJ's treatment of Dr. Murphy's opinions, I find no error. Dr. Murphy served as a consultative psychologist. (AR 206). Claimant does not specify what she objects to with respect to the ALJ's discussion and ultimate conclusion regarding Dr. Murphy's opinions, but to the best of my understanding, claimant believes the ALJ should have assessed claimant with an RFC that would be consistent with Dr. Murphy's opinions. (Doc. 15, at 20). More specifically, I understand claimant's argument to be that the ALJ's RFC assessment was inconsistent with Dr. Murphy's opinions that claimant would have difficulty sustaining concentration and making simple work-related decisions, remembering and carrying out instructions, maintaining schedules and attendance, and working with others without becoming distracted. (*See id.*). I further understand claimant to be arguing that the ALJ's assessment that claimant could perform "simple, routine tasks with simple instructions with occasional interaction with the public

and no production rate pace," is materially different from Dr. Murphy's assessment of claimant's abilities, which claimant argues should have been adopted by the ALJ. (*Id.*).

Dr. Murphy's medical source statement with respect to claimant reads as follows:

> She has adequate ability to understand and remember locations and work-like procedures. She can understand and remember simple and/or detailed instructions. She is likely to having [sic] difficulty sustaining concentration and persisting in making simple work-related decisions, and remembering and carrying out instructions, and maintaining schedules and attendance, and sustaining routine while working in coordination with and in proximity to others without being distracted by them. . . . She would have difficulty adapting to changes in the work setting. . . .

(AR 1524). I disagree with claimant's assertion that Dr. Murphy opined that claimant could not perform simple, routine tasks with simple instructions. Dr. Murphy opined that claimant "can understand and remember simple and/or detailed instructions," but that she would have difficulty remembering and carrying out such instructions. (*Id.*). It is notable, however, that Dr. Murphy specifically opined that claimant was capable of understanding and remembering such instructions. Even assuming, *in arguendo*, that claimant would have *difficulty* with such instructions, that does not mean that claimant was incapable of adhering to such instructions. Dr. Murphy's opinion that claimant could understand and remember simple and/or detailed instructions is indicative that claimant would be able to do such tasks, even if they were difficult for her. I, therefore, do not see the same disagreement that claimant sees between the ALJ's assessment of claimant's ability to handle instructions and Dr. Murphy's assessment of claimant's ability to handle instructions.

Claimant also seems to assert that the ALJ's assessment that claimant could not perform at production rate pace is inconsistent with Dr. Murphy's assessment of claimant's abilities. (Doc. 15, at 20). I, however, fail to see the inconsistency. In fact, Dr. Murphy does not opine *at all* on the issue. The most analogous opinion of Dr.

Murphy's that I am able to find is that claimant would have difficulty "sustaining routine while working in coordination with and in proximity to others without being distracted by them." (AR 1524). The ALJ, however, determined that claimant could not maintain production rate pace. (AR 199). This restriction seems to adhere closely to Dr. Murphy's opinion that that claimant would have difficulty sustaining routine while working with others without becoming distracted.

Assuming, *in arguendo*, however, that the ALJ's RFC assessment departed from Dr. Murphy's opinion in each way claimant alleges, I still find no error. The ALJ provided numerous reasons for discounting Dr. Murphy's opinions, but, generally speaking, the ALJ found that Dr. Murphy's report did not support the limitations assessed and that the report was internally inconsistent. Further, the ALJ found that Dr. Murphy's examination and other examinations "failed to reveal signs indicative of all the limitations Dr. Murphy indicated." (AR 207). I find that the ALJ properly considered Dr. Murphy's opinions.

As a consultative examiner, Dr. Murphy's opinions are not inherently entitled to the same degree of weight to which a treating physician's opinion would be entitled. *Shontos v. Barnhart*, 328 F.3d 418, 425 (8th Cir. 2003). Further, Dr. Murphy's examination revealed that although claimant struggled with certain tasks, such as recounting the names of the two presidents prior to the sitting president, calculating serial sevens, and recalling two of three words after five minutes had elapsed, claimant performed well on a number of other tasks. (AR 1523). Specifically, claimant knew the date and the name of the city and state in which she lived, the name of the current president, the name of the facility in which Dr. Murphy evaluated claimant, as well as Dr. Murphy's name. (*Id.*). Claimant could also recall the menu of her most recent meal, estimated elapsed time correctly, was able to recall her mother's maiden name, was able to calculate serial threes properly to the fourth calculation, could spell a five-letter word

correctly both forward and backward, and was able to rearrange letters into alphabetical order. (*Id.*). Finally, claimant was able to recall six digits forward, three digits backward, and resequenced four digits. (*Id.*).

With respect to other examinations, the ALJ found that other examinations did not support the limitations Dr. Murphy assessed and, particularly, that "examinations failed to show that the claimant would have difficulty sustaining concentration and persisting in making simple work-related decisions." (AR 207). In support, the ALJ turned to a finding that on one occasion, claimant's "attention and concentration were fine." (AR 204, 1816). The ALJ further found that claimant had, at least at times, "logical and goal directed [sic] thought process." (AR 204, 1086). Finally, the ALJ found that on numerous occasions, claimant "was observed to have normal psychomotor activity." (AR 204, 1910, 1912, 1915). On those same occasions, claimant's judgment, reasoning, and insight were found to be "fair." (AR 1910, 1912, 1915). Notably, the reports to which the ALJ cited span a lengthy period of time, from September 2014, through September 2015, with an additional record being from October 2012. This supports the ALJ's finding that "examinations failed to show signs *consistently* that the claimant had significant psychiatric symptoms." (AR 203 (emphasis added)).

Although the evidence detracting from the ALJ's finding as to claimant's ability to concentrate and follow instructions could lead one to find that claimant is not capable of concentrating and following instructions, it is just as possible to conclude that claimant does have the capabilities with which the ALJ assessed claimant. Because the substantial evidence on the record as a whole could support the ALJ's finding, I must defer to the ALJ's determination. *See Kluesner*, 607 F.3d at 536. As such, I find that the ALJ's determination as to claimant's ability to concentrate and follow instructions is proper. Likewise, I find that the ALJ properly considered Dr. Murphy's opinion with respect to claimant's ability to follow a routine. As such, I recommend that the Court uphold the

ALJ's consideration of Dr. Murphy's opinions and the weight the ALJ afforded to Dr. Murphy's opinions.

### iii.    *Substantial Evidence on the Record as a Whole*

Claimant next argues that the ALJ's residual functional capacity assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source.  (Doc. 15, at 22-23).  In support, claimant argues that the ALJ's residual functional capacity assessment is flawed because the ALJ rejected the limitations assessed by Dr. Bastola.  Claimant also references Dr. Robert P. N. Shearin, M.D.'s findings to assert that Dr. Shearin's findings were consistent with Dr. Bastola's conclusions, but I am unable to discern the significance claimant seems to attribute to this notation.  (*Id.*, at 23).

Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record.  *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("It is true that we do not consider the opinions of non-examining consulting physicians *standing alone* to be 'substantial evidence.'" (emphasis added)).  "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole."  *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

Here, the ALJ addressed claimant's physical impairments, as well as claimant's mental impairments.  In addressing both the physical and mental impairments, the ALJ turned to claimant's statements and the statements of claimant's friends.  (AR 200-01).  The ALJ then discussed the medical records at length.  (AR 201-04).  Notably, in discussing the medical records, the ALJ did not attempt to interpret the records; the ALJ's discussion is limited to recounting the information contained in the records and the ALJ's

own discussion of how the records were weighed in assessing claimant's RFC. The ALJ then discussed the opinion evidence that was offered by various medical sources.

In addressing claimant's physical impairments, specifically, the ALJ turned to multiple sources. First, the ALJ attributed "some weight" to the opinions of non-examining state medical consultant Dr. Donald Shumate, D.O. (AR 205). The ALJ discounted the weight afforded Dr. Shumate's opinions because Dr. Shumate did not have the benefit of certain evidence that was submitted after Dr. Shumate's evaluation; the subject evidence "indicate[d] greater limitation in activities such as lifting, walking, and standing." (*Id.*). Next, the ALJ turned to Dr. Bob Badger, D.O., who was one of claimant's treating physicians. (*Id.*). The ALJ's attributed "little weight" to Dr. Badger's opinions. (*Id.*). The ALJ attributed "very little weight" to physician assistant Lynn Gingerich's "recommendation for temporary limitations" that claimant avoid "long road trips due to recent gastric bypass surgery and due to risk for developing deep vein thrombosis." (*Id.*). The ALJ attributed "some weight" to consultative examiner Dr. Shearin's opinions. (*Id.*). Finally, as discussed above, the ALJ attributed "little weight" to Dr. Bastola's opinions. (AR 205-06).

Turning to claimant's mental impairments, the ALJ again consulted the opinion evidence of record. (AR 206-07). The ALJ attributed "some weight" to the opinions of state agency non-examining psychological consultant Dr. Dee Wright, Ph.D. (AR 206). The ALJ afforded Dr. Wright's opinions only some weight because Dr. Wright did not have the benefit of certain evidence that had not been submitted as of the date Dr. Wright conducted her review. (*Id.*). As set forth above, the ALJ attributed consultative examiner Dr. Murphy's opinions "little weight." (AR 206-07). The ALJ gave "little weight" to the opinions of claimant's therapist, Julianne Klesel. (AR 207). Finally, the ALJ likewise gave "little weight" to the opinions of nurse practitioner Shelby Allen-Benitz. (*Id.*).

In this case, the ALJ was confronted with a great volume of evidence and a large number of medical opinions. The ALJ's decision shows that he carefully considered each piece of evidence and relied on the findings contained in the medical records themselves, as well as the opinions offered by the various medical sources. Notably, in relying on the medical records, the ALJ did not take it upon himself to interpret the records, but rather recounted those objective findings and opinions claimant's medical providers included when generating the records. As such, the ALJ was able to turn to the records themselves to support his decision. Further, although the ALJ discounted the weight given to all of the medical personnel offering opinions—and, indeed, did not afford "controlling weight" or "great weight" to a single opinion—the ALJ still attributed at least "some weight" or "little weight" to each opinion offered. "Some weight" and "little weight" is greater than "no weight." Thus, the ALJ's consideration of the medical opinions of record lends additional support to the ALJ's decision. Based on the ALJ's consideration of the entire body of medical records offered in this case, and based on the ALJ's consideration of the medical opinions of record, I find that the ALJ's decision is supported by substantial evidence on the record as a whole. I therefore recommend that the Court decline to reverse the ALJ's decision on this basis.

### B. Whether Work Exists in Significant Numbers in the National Economy that Claimant Can Perform

Claimant's next argument is a legal argument of whether the Commissioner showed that there are jobs existing in significant numbers in the national economy that claimant can perform. (Doc. 15, at 24-27). The ALJ determined that claimant could perform the jobs of document preparer and addresser, both of which the ALJ found to exist in significant numbers in the national economy. (AR 208). Claimant argues two points: 1) that the job of addresser is obsolete such that it cannot exist in significant numbers in the national economy; and 2) that the job of document preparer is beyond

claimant's capabilities and, thus, is not a job that claimant can perform. I will first address whether the job of document preparer is available to claimant.

The *Dictionary of Occupational Titles* provides that the job of document preparer requires a reasoning level of three. U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES Code No. 249.587-018 (4th ed., rev. 1991). Claimant argues that based on the RFC the ALJ assessed claimant with, claimant has a reasoning level that is insufficient to perform a job requiring a reasoning level of three. (Doc. 15, at 26-27). Specifically, claimant states that "[a] limitation to simple, routine, or repetitive work is inconsistent with Reasoning Level 3." (*Id.*, at 26). The ALJ limited claimant to "simple, routine tasks with simple instructions." (AR 199). In the abstract, there is tension between the ALJ's RFC assessment and the ALJ's determination that claimant could perform the work of a document preparer. *See Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) ("In the abstract, tension exists between only being able to understand, remember, and follow simple, concrete instructions and working as a cashier."). Although this tension is not dispositive of whether claimant is capable of performing the job of document preparer, the ALJ did not attempt to resolve this tension, and the record is otherwise unclear as to whether claimant could perform the job of document preparer.[4] I am unable to determine, on this record, whether claimant is capable of performing the job of document preparer. *See id.* (providing that the Eighth Circuit "do[es] not decide cases in the abstract"). The Eighth Circuit has held that where a claimant has performed the subject job, and there is no evidence of mental deterioration, deciding the claimant's ability to perform said job would not necessarily be a decision made in the abstract. *Id.* There is no evidence in this record that claimant ever worked

---

[4] The Commissioner's brief does not address the merits of whether claimant could perform the job of document preparer and instead states that "[t]he Court need not address [claimant's] argument regarding the document preparer occupation." (Doc. 20, at 22).

as a document preparer in the past. I will therefore assume, *in arguendo*, that claimant is incapable of performing the job of document preparer.

Because I am proceeding as though claimant is incapable of performing the job of document preparer, I must address the issue of whether the job of addresser exists in significant numbers in the national economy. Claimant does not challenge her ability to perform this job, but rather argues that the job is now obsolete. When determining whether work exists in significant numbers, the Court should consider many criteria, including the reliability of the vocational expert's testimony, the types and availability of work identified, and other such factors. *See Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). After considering such factors, the trial judge should then make a "common sense" decision as to whether work exists in significant numbers by "weighing the statutory language as applied to a particular claimant's factual situation." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (citation and internal quotation marks omitted). Importantly, when the ALJ reaches Step Five and must determine whether work exists in significant numbers in the national economy that claimant can perform, the Commissioner bears the burden of proof. *Id.*

The vocational expert testified that claimant could perform the job of addresser, which involves "stuffing envelopes, putting labels on envelopes." (AR 259). The vocational expert's explanation of the duties of an addresser was slightly different from the *Dictionary of Occupational Titles*' description of an addresser as one who "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DICTIONARY OF OCCUPATIONAL TITLES, Code No. 209.587-010.[5] When there is a conflict between a vocational expert's testimony

---

[5] Unfortunately, the 1991 Fourth Edition is the most recent version of the *Dictionary of Occupational Titles* in existence despite the obvious and significant technological changes that have occurred in the economy since then. Moreover, the addresser occupation was last updated in 1977.

and the *Dictionary of Occupational Titles*, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704, at *2 (Dec. 4, 2000). *Kemp ex. rel. Kemp v. Colvin*, 743 F.3d 630, 632-33 (8th Cir. 2014).

Here, the ALJ did not elicit such a reasonable explanation, and such a reasonable explanation is not immediately apparent from the record. The Commissioner argues that the vocational expert's testimony differed from the *Dictionary of Occupational Titles'* description of "addresser" because the vocational expert elaborated upon the *Dictionary of Occupational Titles'* description. (Doc. 20, at 22). Although the Social Security Administration has opined that such elaboration could be a reasonable explanation for a conflict, 2000 WL 1898704, at *2, I am unable to tell if this is the reason for the conflict presented in the instant case. The ALJ did not ask the vocational expert to provide an explanation for why the expert's definition of addresser differed from the definition. As such, I am unable to tell if the vocational expert's testimony on the issue of the addresser occupation is reliable. As a result, I cannot determine whether the vocational expert's seemingly more modern explanation of "addresser" should be used over the description given in the *Dictionary of Occupational Titles*. Because I do not have this information, I am not in a position to determine whether the job of addresser is now obsolete. I therefore find it appropriate to entirely refrain from reaching the question of whether the job of addresser is obsolete. In using my common sense, I am unable to definitively find whether the job of addresser exists in significant numbers in the national economy that claimant can perform. *See Johnson*, 108 F.3d at 180.

I have considered both the job of document preparer and of addresser and have been unable to make a definitive finding as to whether work exists in significant numbers in the national economy that claimant can perform. I find that there is a possibility that claimant could perform the work of "document preparer," but the record is insufficient to determine whether claimant has the requisite reasoning level to perform the job. As for addresser, I find that the ALJ erred by failing to reconcile the conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* and, as a result, it is unclear whether the job of "addresser" should be considered using the vocational expert's description or using the *Dictionary of Occupational Titles*' description. Because this is unclear, I am unable to reach the question of whether the job of addresser, as identified in this case, is now obsolete. The ALJ identified no other jobs that claimant could perform. Because the ALJ's decision became the final decision of the Commissioner and the ALJ failed to identify any such jobs, I find that the Commissioner has failed to meet her burden of proof in showing that work exists in significant numbers in the national economy that claimant can perform. I therefore recommend that the Court **reverse and remand** the ALJ's decision with instructions to reevaluate whether work exists in significant numbers in the national economy that claimant can perform. If the Commissioner finds claimant can perform the job of document preparer, I recommend that the Court instruct the Commissioner to make specific findings with respect to whether claimant has the reasoning level necessary to perform the job.

### C.    *Completeness of the Administrative Record*

Finally, claimant alleges that remand is required because the Commissioner failed to include in the administrative record sixty pages of medical records from the University of Iowa Hospitals and Clinics, dated January 11, 2013, through July 31, 2014. (Doc. 15, at 27-29).    Claimant further asserts that the Court "cannot properly review

[claimant's] claim as the Commissioner has not provided a complete [record] of the administrative proceedings." (*Id.*, at 28).

The records alleged to be missing from the record, however, appear to be included. Indeed, the record includes eighty-five pages of medical records dated between January 11, 2013, and July 31, 2014. (AR 1419-74, 1633-53, 2058-65). By all appearances, the record is complete, and plaintiff has failed to show that the record is incomplete. Further, when the Commissioner pointed out that the record appeared to be complete (Doc. 20, at 22-23), and claimant responded, claimant did little more than state, once again, that "new evidence" was erroneously omitted from the record. (Doc. 22, at 4). Claimant does not indicate that there are additional records to be had from the University of Iowa Hospitals and Clinics beyond those that are already included in the record and, based on my assessment of the record in light of plaintiff's assertions, I am unable to find any errors in the compilation of the record. Therefore, I recommend that the Court not reverse and remand the ALJ's decision based on the alleged elimination of certain medical records from the administrative record.

## VI. CONCLUSION

For the aforementioned reasons, I respectfully recommend that the Court **reverse and remand** the ALJ's decision for further proceedings consistent with this Report and Recommendation. Specifically, I recommend that the Court reverse and remand the ALJ's decision with instructions to reevaluate whether work exists in significant numbers in the national economy that claimant can perform. If the Commissioner finds claimant can perform the job of document preparer, I recommend that the Court instruct the Commissioner make specific findings with respect to whether claimant has the reasoning level necessary to perform the job.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance

with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b).  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* FED. R. CIV. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 2nd day of August, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa